JJD:CNR
F. #2013R01737

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

MICHAEL RANDALL,

Defendant.

- - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   MAY 16 2014   ★

LONG ISLAND OFFICE

**TO BE FILED UNDER SEAL**

COMPLAINT AND
AFFIDAVIT IN
SUPPORT OF
ARREST WARRANT

(21 U.S.C. § 841(a)(1))

**14-0464M**

ANTON C. KOHUT, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

In or about and between January 2009 and September 2013, within the Eastern District of New York and elsewhere, the defendant MICHAEL RANDALL did knowingly and intentionally distribute controlled substances, which offenses involved substances containing oxycodone, oxymorphone and methadone, Schedule II controlled substances, and carisoprodol, a Schedule IV controlled substance, without a legitimate medical purpose.

(Title 21, United States Code, Section 841(a)(1))

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1. I have been a Special Agent with the DEA for approximately 16 years and am currently assigned the DEA's Long Island District Office. During my tenure with the DEA, I have participated in numerous narcotics investigations in which prescriptions for Schedule II and Schedule IV controlled substances have been issued by doctors to patients outside the usual course of professional practice and not for a legitimate medical purpose.

2. I am familiar with the information set forth below based on my participation in the investigation, my review of the investigative file, my training and experience and from discussions I have had with other law enforcement personnel concerning the investigation described herein. I have also conferred with a medical doctor who specializes in pain management and is the director of a pain management practice at a major hospital in New York City (the "Pain Management Specialist") about this investigation.[2]

## INTRODUCTION

3. I am participating in an investigation of the defendant MICHAEL RANDALL, a family medicine physician with a Doctor of Osteopathy ("D.O.") Degree, who is the owner and sole practitioner at Middle Country Family Medicine, P.C. located in Centereach, New York ("MCFM"). The investigation has revealed that RANDALL illegally issued prescriptions for Schedule II and Schedule IV controlled substances outside the usual course of professional practice and not for a legitimate medical purpose.

---

[2] Unless otherwise indicated, any statements attributable to individuals herein are set forth in sum and substance and in part.

## THE DISTRIBUTION OF CONTROLLED SUBSTANCES GENERALLY

4. The Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and regulations promulgated thereunder, classify controlled substances in five schedules. Schedule I controlled substances, including, for example, heroin and LSD, do not have an acceptable medical use in the United States. Schedule II through Schedule V controlled substances have acceptable medical uses. The medical use of Schedule II controlled substances, including oxycodone, oxymorphone and methadone, is severely restricted because such drugs have a high abuse potential. Schedule III controlled substances have an abuse potential less than those in Schedule II, but more than Schedule IV controlled substances, including, for example carisoprodol, and so forth. Schedule V controlled substances consist primarily of preparations containing limited quantities of certain narcotics and stimulant drugs.

5. Pursuant to Title 21, C.F.R. §§ 1306.11(a) and 1306.21(a), a controlled substance listed in Schedules II, III, IV or V, that is a prescription drug, as determined under the Food, Drug & Cosmetics Act, 21 U.S.C. §§ 301 et seq., may be dispensed only if prescribed by an authorized practitioner.

6. Title 21, C.F.R. § 1306.04(a) sets forth the purpose of the issuance of a prescription. It says, in pertinent part, in order for "[a] prescription for a controlled substance to be effective, [it] must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner…[a]n order purporting to be a prescription issued not in the usual course of professional treatment…is not a prescription within the meaning and intent of section 209 of the Act (21 U.S.C. 829)

and…the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

7. Oxycodone, oxymorphone and methadone are semi-synthetic opioid analgesic medications classified as Schedule II controlled substances that are generally prescribed for the relief of moderate to severe pain.

8. Carisoprodol is a muscle relaxant classified as a Schedule IV controlled substance that is generally prescribed for the relief of acute musculoskeletal pain.

## BACKGROUND OF THE INVESTIGATION

9. In the fall of 2013, the DEA began an investigation into defendant MICHAEL RANDALL's practices after receiving information from two Long Island pharmacists regarding oxycodone prescriptions written by RANDALL.

10. Thereafter, the DEA obtained records from the New York State Bureau of Narcotics Enforcement ("BNE") for prescriptions written by defendant MICHAEL RANDALL and filled between January 2011 and early September 2013. In that time period, RANDALL wrote over 7,300 oxycodone prescriptions totaling more than 1.1 million pills, which is a disproportionately high number for a family medicine physician.

11. From November 2013 through April 2014, the DEA obtained and reviewed copies of MCFM patients' medical files. Agents from the United States Department of Health and Human Services, Office of the Inspector General who are also involved in the investigation of defendant MICHAEL RANDALL also obtained a copy of the MCFM computerized records in April 2014. The DEA also interviewed current and former patients and MCFM employees regarding RANDALL's distribution of controlled substances. The

DEA also consulted with the Pain Management Specialist about proper use of opioid controlled substances and also certain MCFM patients' medical files.

**PROBABLE CAUSE**

12. A review of the evidence obtained during the course of the DEA investigation revealed that defendant MICHAEL RANDALL prescribed Schedule II and Schedule IV controlled substances on a continuing basis to MCFM patients without a legitimate medical purpose after learning these patients (a) were in treatment for substance abuse and/or received medication to treat opioid addiction, (b) had suffered non-fatal drug overdoses, (c) were engaged in "doctor shopping," and/or (d) tested positive for non-prescribed controlled substances, such as cocaine. RANDALL also violated the terms of his own pain management agreements with MCFM patients by failing to discharge certain patients who failed to comply with the terms and conditions of those agreements and continuing to write them prescriptions for controlled substances. Several MCFM patients who were formally discharged in writing for violation of the pain management agreements or for conduct delineated above received prescriptions for controlled substances from RANDALL subsequent to their discharge. RANDALL's willingness to provide prescriptions for such patients without legitimate medical purpose is further evidence of his illicit activity.

Patient #1

13. For example, my review of the evidence gathered to date indicates that a MCFM patient, whose identity is known to the government ("Patient #1"), received prescriptions from defendant MICHAEL RANDALL for more than a three year period ending May 1, 2013, including prescriptions for oxycodone and methadone, Schedule II controlled

substances, and carisoprodol, a Schedule IV controlled substance. A letter dated September 14, 2009 contained in Patient #1's medical file indicated that Patient #1 was receiving treatment for substance abuse/dependence. On or about July 26, 2010, Patient #1 signed a MCFM pain management agreement, which provided, among other things, that any lost, stolen, misplaced or overused medications would not be replaced under any circumstances and that two or more episodes of lost, stolen, misplaced or overused medications within a six month period would result in the patient's discharge from MCFM. Despite this language, Patient #1 reported lost or stolen prescriptions on four occasions, including two times within a six month period in 2012, and RANDALL did not discharge Patient #1 and replaced the controlled substances on three of the four occasions. Patient #1's medical records and BNE records also show that Patient #1 received prescriptions for controlled substances one week or more earlier than scheduled. Between February 2011 and April 2013, there were at least eight such instances not explained in progress notes or accounted for as replacement prescriptions for lost or stolen pills. In January 2013 for example, two prescriptions provided by RANDALL for a 30-day supply of 240 oxycodone pills were filled within a 14-day period. Also in Patient #1's medical file was a report of a consultation Patient #1 had with a spine surgeon on or about October 25, 2011. In that report, the surgeon recommended that Patient #1 attempt to decrease the use of narcotic pain medication. Contrary to that recommendation, RANDALL increased Patient #1's prescriptions from eight 15mg oxycodone pills per day to six 30mg oxycodone pills per day.

14. With respect to Patient #1, I spoke to the Pain Management Specialist who opined that given Patient #1's history of substance abuse treatment, repeated instances of

lost prescriptions, and numerous instances of obtaining opioid controlled substances earlier than scheduled, by March 13, 2013, at the very latest, there was no longer any legitimate medical need for defendant MICHAEL RANDALL to prescribe Patient #1 oxycodone, methadone or carisoprodol. Between March 13, 2013 and May 1, 2013, RANDALL illegally distributed to Patient #1 660 30mg oxycodone pills, 270 10mg methadone pills and 360 350mg carisoprodol pills.

Patient #2

15. On or about January 7, 2014, I interviewed a MCFM patient, whose identity is known to the government ("Patient #2"), regarding defendant MICHAEL RANDALL's prescription of oxycodone beginning in early 2011. Patient #2 stated that in or about May 2013, Patient #2 tested positive for cocaine and admitted cocaine use to RANDALL. A few days later, RANDALL wrote Patient #2 a prescription for oxycodone and continued to prescribe oxycodone in the months that followed. According to Patient #2 medical records obtained from MCFM, Patient #2 tested positive for cocaine in December 2012 and May 2013. Following the failed drug test in December 2012, RANDALL wrote in progress notes that "[Patient #2] declines rehab detox." Progress notes from June 2013 make reference to "Seafield," which is a substance abuse treatment facility on Long Island. Patient #2 also stated that RANDALL stated he would no longer write Patient #2 prescriptions for oxycodone in December 2013 because RANDALL was under investigation and that during that conversation, there was no discussion of Patient #2's medical condition. Patient #2 also stated that RANDALL never discussed a strategy for discontinuing opioid therapy, commonly referred to a "treatment plan," and Patient #2's medical file makes no reference to any treatment plan.

16. With respect to Patient #2, I spoke to the Pain Management Specialist who opined that, given Patient #2's failed drug test in December 2012, the twelve prescriptions issued for a combined total of 935 30mg oxycodone pills by defendant MICHAEL RANDALL for Patient #2 between January 21, 2013 and August 14, 2013 were not issued for a legitimate medical purpose. The Pain Management Specialist also stated that once RANDALL was aware that Patient #2 was being treated for substance abuse, any potential benefit from the continued use of opioids is substantially outweighed by the danger of dependence and addiction to the opioids and in issuing such prescriptions RANDALL acted outside the scope of the usual course of professional practice. The Pain Management Specialist further stated pain management doctors regularly discuss and document treatment plans for patients where the discontinuation of opioid therapy is indicated and that the absence of such a plan for patients such as Patient #2 is a further indication of the absence of legitimate medical need for the prior provision of oxycodone to Patient #2.

Patient #3

17. On February 26, 2014, I interviewed a MCFM patient, whose identity is known to the government ("Patient #3"), regarding defendant MICHAEL RANDALL's prescription of oxycodone dating back to at least 2011 to allegedly treat rheumatoid arthritis. Patient #3 stated that he frequently ran out of his RANDALL prescribed oxycodone pills prior to his next visit and would self-medicate with unprescribed opioids such as methadone. After a failed drug test in which Patient #3 tested positive for methadone that was not prescribed by RANDALL, Patient #3 stated that he admitted to RANDALL that he had taken methadone that was not prescribed by RANDALL. Patient #3's MCFM medical files show that Patient #3

tested positive for both methadone and marijuana in March, April and September of 2013 and also tested positive for two additional opioid controlled substances – morphine and fentanyl – in September 2011 that were not prescribed by RANDALL. Notes in Patient #3's MCFM files from December 2011 indicate that Patient #3 declined to take Suboxone, a Schedule III controlled substance used to treat addiction to opioid narcotics. In or about May 2013, Patient #3 was discharged from MCFM due to Patient #3's illicit drug use. However, in June 2013, RANDALL wrote new prescriptions for oxycodone in the same quantities as provided prior to discharge. Patient #3's MCFM medical file makes no reference to a treatment plan.

18. With respect to Patient #3, I spoke to the Pain Management Specialist who opined that given Patient #3's failed drug test in September 2011 showing the presence of morphine and fentanyl, neither of which were provided by defendant MICHAEL RANDALL, there was no legitimate medical need for the twenty-nine prescriptions issued for a total of 6,610 30mg oxycodone pills and twenty-two prescriptions issued for a total of 6,114 80mg oxycodone pills by RANDALL for Patient #3 between October 3, 2011 and August 26, 2013.

Patient #4

19. On January 7, 2014, I interviewed a MCFM patient, whose identity is known to the government ("Patient #4"), regarding defendant MICHAEL RANDALL's prescription of oxycodone and oxymorphone dating back to approximately 2008 ("Patient #4"). Patient #4 stated that he had been hit by a car in 2002 and had suffered a carisoprodol overdose in 2005. Patient #4's MCFM medical file indicates that Patient #4 was a patient of RANDALL from approximately September 2008 until December 2013. A progress note in Patient #4's file from January 2009 referenced a positive drug test for cocaine, mentioned an outpatient

Case 2:15-cr-00122-SJF-SIL Document 1 Filed 05/16/14 Page 10 of 11 PageID #: 10

10

substance abuse treatment facility and noted, in sum and substance, that if random drug testing in the future was positive for illicit substances, Patient #4 would be discharged from MCFM. Despite this notation, RANDALL continued to prescribe opioids to Patient #4 even after Patient #4 tested positive for the presence of morphine in July 2010 and March 2011 and cocaine in November 2011. Patient #4's medical file contained a copy of the emergency room report for Patient #4's overdose of carisoprodol in 2005, which was faxed to MCFM in or about September 2008. The report indicated, in sum and substance, that Patient #4 had been abusing pain medicine and the emergency room's toxicology screen further indicated the presence of opioids and cocaine. Patient #4's medical file also contained three pain management agreements dated July 8, 2010, June 24, 2013 and July 22, 2013. Each agreement stated that lost medications will not be replaced, yet RANDALL replaced a reportedly lost supply of oxycodone on July 19, 2010. The agreements also stated that Patient #4 would be required to see a pain management specialist due to his prescription of long acting opioid medication. While RANDALL prescribed long acting oxymorphone to Patient #4 through the middle of 2012, the notes in Patient #4's medical file indicated that Patient #4 failed to see a pain management specialist between 2010 and 2013.

20. With respect to Patient #4, I spoke to the Pain Management Specialist who opined that given, among other things, the January 2009 reference to Patient #4's then recent positive test for cocaine, there was no legitimate medical need for the fifty-one prescriptions issued for a total of 9,523 30mg oxycodone pills, eighty-two prescriptions issued for a total of 2,240 40mg oxymorphone pills and fourteen prescriptions issued for a total of 310

30mg oxymorphone pills by RANDALL for Patient #4 between January 10, 2011 and August 19, 2013.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant MICHAEL RANDALL so that he may be dealt with according to law.

In addition, it is respectfully requested that this affidavit and arrest warrant be filed under seal until further order of the Court. The investigation into the activities of defendant MICHAEL RANDALL is continuing. Premature disclosure of this affidavit and arrest warrant could jeopardize the investigation and afford the defendant the opportunity to flee from prosecution.

_____
ANTON C. KOHUT
Special Agent, Drug Enforcement Administration

Sworn to before me this
16 day of May, 2014

/s/ William D. Wall
_____
THE HONORABLE WILLIAM D. WALL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK